# Illinois Official Reports

## Appellate Court

*People v. Rodriguez*, 2014 IL App (2d) 130148

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALEJANDRO RODRIGUEZ, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-13-0148 |
| Filed | October 29, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The appellate court upheld defendant's convictions arising from a shooting spree during which he was shooting at two rival gang members, since the State proved beyond a reasonable doubt that defendant acted "knowingly" for purposes of his armed violence and aggravated discharge of a firearm convictions and that he discharged a firearm within 1,000 feet of a school that was operating at the time of the offense, and even though IPI Criminal 4th Nos. 18.11 and 18.12 do not mirror section 24-1.2(a)(1) of the Criminal Code, no plain error or ineffective assistance of counsel occurred, especially when an examination of the evidence by a rational trier of fact would show beyond a reasonable doubt that defendant acted with a "knowing" mental state, that he shot "at or into" the buildings that he hit, that he knew or should have known the buildings were occupied, and his counsel's failure to argue the discrepancy between the language of the instructions and the statute with respect to whether defendant was shooting "at or into" or "in the direction of" the buildings did not amount to deficient performance. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 11-CF-1979; the Hon. David R. Akemann, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal    Thomas A. Lilien and Kerry Goettsch, both of State Appellate Defender's Office, of Elgin, for appellant.

Joseph H. McMahon, State's Attorney, of St. Charles (Lawrence M. Bauer and Jay Paul Hoffmann, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel    PRESIDING JUSTICE BURKE delivered the judgment of the court, with opinion.
Justices Hutchinson and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Alejandro Rodriguez, was charged with eight crimes in connection with two shootings in Aurora on September 3, 2011. The State's theory at trial was that defendant, riding as a passenger in a car driven by Fernando Arroyo, fired several shots at two rival gang members, Marcos Gonzalez and Ignacio Perez, intending to kill them. Neither Gonzalez nor Perez was struck, but two houses and two vehicles were damaged.

¶ 2    The jury found defendant guilty of (1) armed violence predicated on felony criminal damage to property, that property being Jose Martinez's 2006 Ford Fusion parked at 759 Columbia Street (see 720 ILCS 5/33A-2(b) (West 2010)); (2) armed violence predicated on felony criminal damage to property, that property being Miguel Hernandez's Ford pickup truck parked at 736 Kane Street (see 720 ILCS 5/33A-2(b) (West 2010)); (3) aggravated discharge of a firearm for firing at an occupied building at 763 Columbia Street, which was within 1,000 feet of Brady Elementary School (see 720 ILCS 5/24-1.2(a)(1), (b) (West 2010)); (4) aggravated discharge of a firearm for firing at an occupied building at 736 Kane Street (see 720 ILCS 5/24-1.2(a)(1) (West 2010)); and (5) unlawful possession of a firearm by a street gang member who lacked a valid firearm owner's identification (FOID) card (see 720 ILCS 5/24-1.8(a)(1) (West 2010)). Defendant appeals all but the unlawful-possession-of-a-firearm conviction.

¶ 3    First, defendant challenges the sufficiency of the evidence supporting the "knowingly or intentionally" mental state element shared by armed violence and aggravated discharge of a firearm. Defendant advocates outright reversal of the convictions on the ground that the State failed to prove that he acted "knowingly or intentionally," because there was no evidence that he "purposefully" shot at any of the property specified in the charging instrument. We conclude that the State proved beyond a reasonable doubt that defendant discharged the firearm knowingly and that the absence of evidence that he intentionally targeted the houses and vehicles that were actually struck does not compel reversal.

¶ 4    Second, defendant argues that the State failed to prove the locality enhancement for aggravated discharge of a firearm, and therefore the conviction must be reduced from a Class X felony to a Class 1 felony. We conclude that the State proved beyond a reasonable doubt that Brady Elementary was operating as a school on the date of the offense and that defendant committed the offense within 1,000 feet of the school.

¶ 5    Third, defendant contends that the jury was incorrectly instructed on the elements of aggravated discharge of a firearm. The trial court used Illinois Pattern Jury Instructions, Criminal, Nos. 18.11 and 18.12 (4th ed. 2000) (hereinafter, IPI Criminal 4th), which do not mirror section 24-1.2(a)(1) of the Criminal Code of 1961. Defendant points out that a person commits the offense when he shoots "at or into" an occupied building (720 ILCS 5/24-1.2(a)(1) (West 2010)), not "in the direction of or into" the building, as the jury was instructed. Defendant acknowledges that he has procedurally defaulted the issue but argues that he is entitled to a new trial on the two charges because the court committed plain error in using the IPI instructions and that his counsel rendered ineffective assistance for failing to object to them. We conclude that, even though the IPI instructions do not mirror the language of section 24-1.2(a)(1), the phrases "in the direction of or into" and "at or into" are synonymous for purposes of proving defendant guilty beyond a reasonable doubt. Thus, the court did not commit plain error in using the IPI instructions, and defense counsel was not ineffective for failing to raise the issue.

¶ 6    We hold that (1) the State proved beyond a reasonable doubt that defendant committed the shootings "knowingly" as required to sustain the convictions of armed violence and aggravated discharge of a firearm; (2) the State proved the locality enhancement that defendant committed aggravated discharge of a firearm within 1,000 feet of Brady Elementary, which was operating as a school on the date of the offense; and (3) even though IPI Criminal 4th Nos. 18.11 and 18.12 do not mirror section 24-1.2(a)(1), neither plain error nor ineffective assistance occurred and, therefore, defendant is not entitled to a new trial on the charges of aggravated discharge of a firearm.

¶ 7                                    I. BACKGROUND

¶ 8    Defendant was charged by indictment with two counts of attempted first-degree murder (see 720 ILCS 5/8-4(a), 9-1(a)(1) (West 2010)); three counts of armed violence (see 720 ILCS 5/33A-2(b) (West 2010)); and one count each of aggravated discharge of a firearm within 1,000 feet of a school (see 720 ILCS 5/24-1.2(a)(1), (b) (West 2010)); aggravated discharge of a firearm (see 720 ILCS 5/24-1.2(a)(1) (West 2010)); and unlawful possession of a firearm by a street gang member (see 720 ILCS 5/24-1.8(a)(1) (West 2010)).

¶ 9    At trial, Gonzalez testified that, on the afternoon of September 3, 2011, he was walking down Kane Street in Aurora when a car pulled up with defendant in the passenger seat. Gonzalez was a member of the Latin Kings street gang, and he knew that defendant was a member of the Insane Deuces street gang. Gonzalez and defendant were arguing when defendant drew a pistol and started shooting. Gonzalez heard the shots but did not see the gun. The police stopped Gonzalez 10 to 15 minutes later to ask about the shooting, but Gonzalez denied any knowledge of the incident at the time.

¶ 10   Perez testified that he had an "association" with the Latin Kings, he lived in the Latin Kings' territory in Aurora, and he had friends who were members. About 3:30 p.m. on September 3, 2011, Perez was walking to a store near Columbia Street when he noticed a car

driven by Arroyo. The car passed Perez twice, and on the second pass a passenger fired three shots at Perez. Perez heard the shots but did not see them. At trial, Perez denied seeing the shooter, but he acknowledged that he had previously told the police that "Rat Face," who was defendant, was the shooter.

¶ 11    Mary Nino testified that, on the date of the shootings, she lived at 768 Columbia Street. Nino was sitting on her porch around 3:30 p.m. when she noticed a gray four-door car pull up from her left. Nino testified that she saw defendant, whom she knew from the streets, partially climb out the passenger-side window, cover his face with a red bandana, and fire a silver gun three or four times. The car traveled 10 to 15 feet past her porch, so the bullets traveled toward the house "kitty corner" to hers. Nino saw a 15- to 16-year-old boy emerge from the rear of the house a few minutes later. Nino called 911 and saw the police go to the house. Later, the police told Nino that they had someone in custody, and she went with them to a nearby street, where she identified defendant as the shooter. Nino also identified a car in police possession as the car from which the shots were fired.

¶ 12    Officer William Sullivan testified that he responded to the shooting. As he was driving, he saw a vehicle matching the description of the car from which the shots were fired and he followed it. Once Officer Sullivan was behind the car, the driver pulled into the first available driveway and waited for the patrol car to pass. By the time Officer Sullivan turned around, the car had pulled out of the driveway and sped away. Officer Sullivan identified defendant as the driver of the car.

¶ 13    The car eventually stopped at an intersection, and a passenger ran from the car. The car drove away in the opposite direction, and Officer Sullivan followed the person running. The person wore a glove and appeared to have something in his waistband. Officer Sullivan apprehended the person running, whom he identified as Arroyo. Arroyo led Officer Sullivan to a bush along the route he had run. Officer Sullivan testified that an evidence technician recovered a .22-caliber revolver from the bush.

¶ 14    Arroyo testified for the State in exchange for prosecutorial leniency. For his testimony, Arroyo would receive a one-year prison term for mob action, to run consecutively to a three-year term for unlawful possession of a firearm by a street gang member. According to Arroyo, he had known defendant since their youth and they lived near each other. The two remained friends even after Arroyo became a member of the Latin Kings and defendant became a member of the Insane Deuces.

¶ 15    Arroyo testified that, in the morning on the day of the shootings, he went to defendant's house to hang out and clean their cars. At one point, Arroyo asked defendant if he knew anyone with guns for sale. Defendant responded by showing Arroyo a gun he had purchased from someone at work. Defendant complained that his bullets were the wrong size, and Arroyo said that he could get the correct bullets at his aunt's house. Arroyo's aunt was hosting a party at her house that day.

¶ 16    Arroyo drove his car to his aunt's house and defendant rode along. According to Arroyo, defendant had a glove on his right hand at the time. Arroyo noticed Gonzalez near the corner of State and Kane Streets. When defendant noticed Gonzalez, he said "there goes that flake," which was meant as a disrespectful term toward the Latin Kings. Arroyo stopped at a stop sign and Gonzalez started throwing gang signs toward defendant. Defendant and Gonzalez argued for several seconds, and defendant drew a gun from his waistband and fired three

times out the window. Arroyo testified that defendant pointed the gun at Gonzalez when he fired.

¶ 17    Arroyo sped away from the scene, driving in a circular route until they arrived near Perez, who was riding a bicycle. At defendant's direction, Arroyo followed him. Arroyo stopped the car near Perez, and defendant put his body halfway outside the car and reached over the top. Arroyo looked through the sunroof and saw defendant fire the gun three times, pointing the gun at Perez, not into the air. Arroyo sped away again and drove to defendant's house.

¶ 18    Defendant took the gun and the glove into his house while Arroyo stayed in the car smoking marijuana. Defendant came back outside wearing a different shirt and not wearing the glove. Arroyo sat in the passenger seat and defendant drove the two to McDonald's for some food. When leaving the restaurant, Arroyo noticed a "narco," an undercover police car, following them. Defendant pulled into a driveway and waited for the car to pass. Defendant backed out and started driving the other way and the police car chased them. Defendant threw the gun and the glove at Arroyo, who put on the glove, grabbed the gun, and exited the car. Arroyo ran and threw the gun and the glove along the way. The police arrested Arroyo and defendant. Arroyo testified that defendant told him in jail that he had urinated on his hand to remove any gunshot residue.

¶ 19    Guadalupe Reyes, the owner of the home at 736 Kane Street, testified that the siding of the home was damaged by bullets during the shooting involving Gonzalez. Miguel Hernandez, who was renting the home from Reyes, testified that his Ford pickup truck, which was parked in the driveway, sustained damage to the driver's-side door. Reyes testified that Hernandez was home at the time of the shooting.

¶ 20    Eric Cepeda, who lived at 763 Columbia Street, was home at the time of the shooting involving Perez. After hearing a loud noise, Cepeda went outside and noticed a bullet hole in the siding. Cepeda's next-door neighbor, Jose Martinez, lived at 759 Columbia Street and his tan Ford Fusion was parked in the driveway between the two houses. The car sustained damage from the shooting.

¶ 21    The trial court admitted evidence from an evidence technician who took photographs of the damage to the houses and the vehicles. The parties stipulated to several recorded inculpatory statements made by defendant while in custody, including that he was concerned that "the old lady saw me."

¶ 22    Officer Sullivan testified about the building and property described as Brady Elementary. Officer Sullivan testified that he was familiar with the area because he had been employed by the Aurora police department for seven years and currently served as a general patrol officer on the east side. Officer Sullivan was familiar with Brady Elementary because it was in his district. He identified Brady Elementary as the building inside a purple rectangle drawn on the State's exhibit No. 28A, which was an aerial photograph of the area. When asked whether Brady Elementary "is just a building that is not in operation or is it currently in operation," Officer Sullivan replied that "it's currently a school" where he "see[s] school kids."

¶ 23    Officer Sullivan testified that, on November 1, 2012, he returned to the area to measure the distance from the location of the shooting to Brady Elementary. According to Officer Sullivan, he "started [measuring] from the chain[-]link gate of 763 Columbia [Street], which was approximately 17 feet from the sidewalk into the property via the driveway." Officer Sullivan used a calibrated measuring device, taking the "most direct route" possible although

the topography made his path "[n]ot exactly straight." Officer Sullivan measured a distance of 856 feet from the chain-link gate to the property line of the school. He also measured a distance of 959 feet from the gate to the school door itself.

¶ 24 Nino and Araceli Alfaro, who lived at 737 Kane Street, also testified about Brady Elementary. Each witness identified Brady Elementary on exhibit No. 28A, and each testified that the aerial photograph "fairly and accurately depict[ed]" the neighborhood on the date of the incident.

¶ 25 The jury acquitted defendant of the two counts of attempted first-degree murder and one count of armed violence but found him guilty of the remaining charges. After the jury returned its verdict, the trial court sentenced defendant to five concurrent prison terms: 22 years for each of the armed violence convictions, 10 years each for aggravated discharge of a firearm within 1,000 feet of a school and aggravated discharge of a firearm, and 5 years for unlawful possession of a firearm by a street gang member. Defendant did not file a motion to reconsider. We granted defendant leave to file a late notice of appeal.

¶ 26                                    II. ANALYSIS
¶ 27                                   A. Armed Violence
¶ 28 When considering a challenge to a criminal conviction based on the sufficiency of the evidence, a reviewing court does not retry the defendant. *People v. Smith*, 185 Ill. 2d 532, 541 (1999). "When reviewing the sufficiency of the evidence, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' (Emphasis in original.)" *People v. Bishop*, 218 Ill. 2d 232, 249 (2006) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *People v. Collins*, 106 Ill. 2d 237, 261 (1985). "Testimony may be found insufficient under the *Jackson* standard, but only where the record evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt." *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004).

¶ 29 Our duty is to carefully examine the evidence while giving due consideration to the fact that the court and the jury saw and heard the witnesses. The testimony of a single witness, if it is positive and the witness credible, is sufficient to convict. *Smith*, 185 Ill. 2d at 541. The credibility of a witness is within the province of the trier of fact, and the finding of the jury on such matters is entitled to great weight, but the jury's determination is not conclusive. We will reverse a conviction where the evidence is so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *Smith*, 185 Ill. 2d at 542.

¶ 30 A person commits armed violence when he personally discharges a firearm that is a Category I or Category II weapon while committing any felony defined by Illinois law, with certain exceptions that do not apply here. 720 ILCS 5/33A-2(b) (West 2010). Defendant does not dispute that the handgun used in the shootings qualifies as a Category I weapon for purposes of the armed violence statute. See 720 ILCS 5/33A-1(c)(2) (West 2010) ("A Category I weapon is a handgun, sawed-off shotgun, sawed-off rifle, any other firearm small enough to be concealed upon the person, semiautomatic firearm, or machine gun.").

¶ 31 Defendant was convicted of two counts of armed violence based on criminal damage to the two parked vehicles. Specifically, the indictment alleged that defendant committed armed

violence (see 720 ILCS 5/33A-2(b) (West 2010)) when he personally discharged a handgun while performing an act of criminal damage to property (see 720 ILCS 5/21-1 (West 2010)) in that he (1) knowingly damaged Martinez's 2006 Ford Fusion automobile, which was parked outside his house on Columbia Street, and (2) knowingly damaged Hernandez's 1997 Ford pickup truck, which was parked outside his house on Kane Street.

¶ 32 Each armed violence count alleged damage exceeding $300, which made each incident of criminal damage to property a felony. See 720 ILCS 5/21-1(2) (West 2010) (violation is a Class 4 felony if the damage to property exceeds $300 but does not exceed $10,000). The State presented evidence that the Ford Fusion sustained $400 in damage and the Ford pickup sustained $760 in damage.

¶ 33 A person commits criminal damage to property when he "knowingly damages any property of another." 720 ILCS 5/21-1(a)(1) (West 2010). When an offense is defined in terms of a particular result, as in these charged instances of criminal damage to property, an individual acts knowingly when he is consciously aware that his conduct is practically certain to cause the result. 720 ILCS 5/4-5(b) (West 2010) (a person acts with knowledge of the result of his or her conduct, described by the statute defining the offense, when he is consciously aware that that result is practically certain to be caused by his conduct); *People v. Hauschild*, 364 Ill. App. 3d 202, 219 (2006), *aff'd in part and rev'd in part*, 226 Ill. 2d 63 (2007).

¶ 34 Defendant argues that the two armed violence convictions must be reversed because the State failed to prove the requisite mental state for the underlying offenses of criminal damage to property. He contends that, because the State's theory was that he intended to shoot Gonzalez and Perez, there was no evidence that he was consciously aware that discharging the handgun was practically certain to damage the vehicles. We disagree. The State presented evidence that the two shootings occurred in the middle of the afternoon in a residential area with personal property, like parked vehicles, nearby. Further, defendant shot three times from a car window in the first incident and three to four times from a moving vehicle in the second incident. Each time, defendant shot from the road toward the sidewalk, with houses, vehicles, and other property in the background. From this evidence, the jury reasonably could have determined that defendant was consciously aware that his conduct was practically certain to damage property in the line of fire.

¶ 35 Defendant contends that the evidence showed that he committed two gang-related shootings in which he fired the handgun intending to hit Gonzalez and Perez and that he did not "target" any of the property specified in the indictment. Therefore, defendant concludes, the State did not prove that he "knowingly" damaged the property. Defendant essentially argues that the State was required to prove that he intended to damage the property, which is not the required mental state for criminal damage to property.

¶ 36 Defendant's reliance on *In re T.A.B.*, 181 Ill. App. 3d 581 (1989), is misplaced. In *T.A.B.*, the respondent, a minor, was convicted of felony criminal damage to property after he took his foster father's car, drove 70 miles per hour in a 35-mile-per-hour zone, lost control, and swerved to avoid a car in his lane. The respondent clipped the bumper of the other car before hitting a telephone pole, causing extensive damage to both vehicles. *T.A.B.*, 181 Ill. App. 3d at 583-84. The passenger in the respondent's vehicle testified that, when the respondent saw the other car, he tried to avoid it by shifting gears and applying the brakes. *T.A.B.*, 181 Ill. App. 3d at 584.

¶ 37    On appeal, we agreed with the respondent that the evidence had not shown that he knowingly or intentionally damaged either car, and therefore the State had failed to prove that he acted with the requisite mental state to commit criminal damage to property under section 24-1(a) of the Criminal Code. *T.A.B.*, 181 Ill. App. 3d at 585. We explained that "knowledge" involves an awareness of the harm that will result, while "negligence" involves the failure to be aware of such results in a situation where the person has a legal duty to be so aware. *T.A.B.*, 181 Ill. App. 3d at 584-85.

¶ 38    We held that, even though the evidence showed that the respondent was driving at a highly excessive speed, the evidence did not show that he was consciously aware that he was practically certain to damage the two automobiles as a result. *T.A.B.*, 181 Ill. App. 3d at 585. Although the respondent's conduct "would substantially increase one's chance of becoming involved in an accident, it would not make such an occurrence a practical certainty." *T.A.B.*, 181 Ill. App. 3d at 585. Under the circumstances, the respondent's conduct was "negligent or even reckless," but he did not act "knowingly." *T.A.B.*, 181 Ill. App. 3d at 585.

¶ 39    In *T.A.B.*, the respondent took his foster father's car on a "joyriding escapade[ ]" that resulted in a traffic collision. *T.A.B.*, 181 Ill. App. 3d at 586. This case is factually distinguishable where, in separate incidents, defendant pointed a handgun at two people on sidewalks in a residential area and fired the weapon six or seven times. The jury reasonably could conclude that parked vehicles, including those struck, were visible in his line of fire. Defendant's conduct not only substantially increased the risk of damaging others' property, but made such a result a practical certainty. We conclude that a rational trier of fact, examining the evidence in the light most favorable to the State, could have found the essential elements of the offense, including the "knowing" mental state of criminal damage to property, beyond a reasonable doubt. See *People v. Jordan*, 218 Ill. 2d 255, 270 (2006).

¶ 40                          B. Aggravated Discharge of a Firearm

¶ 41    Defendant offers two arguments for reversing outright his convictions of aggravated discharge of a firearm and aggravated discharge of a firearm within 1,000 feet of a school. First, he contends that there was no evidence that he purposefully shot "at or into" the buildings specified in the indictment, and therefore the State failed to prove beyond a reasonable doubt that he had the requisite mental state for violating section 24-1.2(a)(1) of the Criminal Code. Second, he argues that the State failed to prove that he discharged the firearm with knowledge that the buildings were occupied. We conclude that requiring proof that defendant shot purposefully at the buildings would improperly negate the "knowingly" mental state requirement explicit in section 24-1.2(a). Further, the State presented sufficient evidence that defendant shot at the buildings knowingly and knew or should have known that the buildings were occupied.

¶ 42                                  1. Mental State
¶ 43                          a. "At or into" v. "In the direction of"

¶ 44    Defendant argues that the evidence did not show that he had the requisite mental state to commit aggravated discharge of a firearm. This issue involves an interpretation of section 24-1.2 of the Criminal Code. When construing a statute, this court's primary objective is to ascertain and give effect to the legislature's intent, keeping in mind that the best and most

reliable indicator of that intent is the statutory language itself, given its plain and ordinary meaning. *People v. Howard*, 233 Ill. 2d 213, 218 (2009). To discern the plain meaning of statutory terms, it is appropriate for the reviewing court to consider the statute in its entirety, the subject it addresses, and the apparent intent of the legislature in enacting it. *Howard*, 233 Ill. 2d at 218. Unless the language of the statute is ambiguous, this court should not resort to further aids of statutory construction and must apply the language as written. *People v. Glisson*, 202 Ill. 2d 499, 505 (2002). Our review is *de novo. People v. Almore*, 241 Ill. 2d 387, 394 (2011).

¶ 45    Section 24-1.2(a) defines aggravated discharge of a firearm, specifying nine ways to commit the offense. Defendant was charged with violating section 24-1.2(a)(1), which provides that a person commits aggravated discharge of a firearm when he or she knowingly or intentionally "[d]ischarges a firearm *at or into* a building he or she knows or reasonably should know to be occupied and the firearm is discharged from a place or position outside that building." (Emphasis added.) 720 ILCS 5/24-1.2(a)(1) (West 2010). Defendant points out that, in contrast, sections 24-1.2(a)(2) through (a)(9) define the offense in terms of discharging a firearm "in the direction of" particular persons or vehicles. 720 ILCS 5/24-1.2(a)(2) to (a)(9) (West 2010). Defendant contends that the use of "at or into" in section 24-1.2(a)(1) and "in the direction of" in sections 24-1.2(a)(2) through (a)(9) indicates a legislative intent for the subsections to operate differently. See *People v. Ousley*, 235 Ill. 2d 299, 313-14 (2009) ("by employing certain language in one instance, and entirely different language in another, the legislature indicated that different results were intended").

¶ 46    Defendant contends that shooting "at or into" an object is different from shooting "in the direction of" the same object and that the difference makes the mental state for section 24-1.2(a)(1) different from the mental state for sections 24-1.2(a)(2) through (a)(9). The potentially relevant definitions of "at" are: (1) "used as a function word to indicate the presence or occurrence of on, in, or near" and (2) "used as a function word to indicate that which is the *goal* of an action or that toward which an action is or motion is *directed*." (Emphases added.) Webster's Third New International Dictionary 136 (1993). Based on the second definition of "at," defendant asserts that the phrase "at or into" implies an intentional targeting, while the phrase "in the direction of" does not.

¶ 47    Defendant asserts that because, under the State's theory, he intended to shoot "at" and kill the rival gang members on the sidewalk, his goal was not to shoot "at or into" the houses that ultimately were struck by his gunfire. Defendant concludes that the discharge of bullets into the houses was "incidental to the intended act" and therefore he lacked the requisite mental state to commit aggravated discharge of a firearm under section 24-1.2(a)(1).

¶ 48    Defendant's interpretation carries superficial appeal but the plain language of section 24-1.2(a) refutes it. Defendant takes the phrases "at or into" and "in the direction of" out of context by disregarding the explicit mental state requirement set forth in section 24-1.2(a) in favor of an inconsistent one that he reads into subsection (a)(1).

¶ 49    Section 24-1.2(a) begins with the requirement that the accused discharged the firearm "knowingly or intentionally." The "knowingly or intentionally" mental state requirement applies to all subsections of section 24-1.2(a). Defendant draws an artificial distinction when he points out that section 24-1.2(a)(1) contains the phrase "at or into" while sections 24-1.2(a)(2) through (a)(9) contain the phrase "in the direction of" when referring to the persons or objects in the line of fire. To adopt defendant's position that section 24-1.2(a)(1)

requires proof that the accused "purposefully" discharged his weapon with the intent to strike the building would be inconsistent with the explicit mental state requirement that the accused acted "knowingly or intentionally." Simply put, defendant's interpretation negates the "knowingly" mental state element of the offense.

¶ 50    Our conclusion is consistent with the dictionary definition of "at." We agree with defendant that the second definition quoted above applies: "used as a function word to indicate that which is the *goal* of an action or that toward which an action is or motion is *directed*." (Emphases added.) Webster's Third New International Dictionary 136 (1993). Defendant defines "at" in terms of acting with a goal, but that implies acting with a mental state that conflicts with the express mental state requirement of section 24-1.2(a)(1). To achieve a harmonious statutory interpretation, we define "at" in terms of "directing" an action toward an object. Webster's Third New International Dictionary 640 (1993) ("direct" means "to cause to turn, move or point undeviatingly or to follow a straight course with a particular destination along a fixed path"). When defendant discharged the firearm "at or into" the houses, he was knowingly directing the bullets toward the houses, even though striking them might not have been his goal.

¶ 51    Defendant echoes his prior argument that the evidence showed that he fired the handgun intending to hit Gonzalez and Perez and did not "target" the houses that were struck and therefore he did not "knowingly" discharge the handgun "at or into" the houses. However, defendant's own theory of the case presented at trial refutes that assertion. Defense counsel argued to the jury that defendant could not be found guilty of attempted first-degree murder where Perez stated that defendant did not shoot at him and Nino stated that defendant was shooting at a house, not at a person. Counsel argued that there was ample evidence that defendant was shooting at the houses and not at Gonzalez and Perez, which renders defendant's appellate argument disingenuous at best.

¶ 52    In any event, defendant now incorrectly contends that the State was required to prove that he *intended* to shoot "at or into" the houses, which is not the required mental state under section 24-1.2(a)(1). Defendant fails to account for the possibility that one can intentionally discharge a firearm at a person and knowingly strike another object instead, which is what the State argued the evidence established in this case. Any evidence that defendant discharged the handgun intending to strike Gonzalez and Perez, and not the houses, does not compel reversal of the convictions of aggravated discharge of a firearm.

¶ 53    Furthermore, we conclude that the State proved beyond a reasonable doubt that defendant acted "knowingly" when he discharged the firearm "at or into" the houses. "A person knows, or acts knowingly or with knowledge of *** [t]he nature or attendant circumstances of his or her conduct, described by the statute defining the offense, when he or she is consciously aware that his or her conduct is of that nature or that those circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that the fact exists." 720 ILCS 5/4-5(a) (West 2010). The State presented evidence that defendant shot three times from a car window in the first incident and three to four times from a moving vehicle in the second incident. The jury heard testimony and saw photographic evidence that the two shootings occurred in a residential area with houses close together. The jury reasonably could have determined that defendant was consciously aware that shooting from a car in the road, even if intending to strike persons on the sidewalk, created a substantial probability that the houses in the background would be struck.

¶ 54    We conclude that a rational trier of fact, examining the evidence in the light most favorable to the State, could have found beyond a reasonable doubt that defendant "knowingly" discharged the firearm at or into the houses. See *Jordan*, 218 Ill. 2d at 270.

¶ 55                                    b. Occupied Buildings

¶ 56    Defendant next argues that the evidence did not show that, at the time of the shootings, he "knew or reasonably should have known" that the buildings were occupied. See *People v. James*, 246 Ill. App. 3d 939, 944-45 (1993) ("it is an essential element of [aggravated discharge of a firearm] that the offender be aware of the presence of individuals"). We conclude that there was sufficient circumstantial evidence to support this element. See *People v. Schmidt*, 392 Ill. App. 3d 689, 702 (2009) (whether the defendant acts knowingly may be inferred from circumstantial evidence, and inferences as to the defendant's mental state are a matter particularly within the province of the jury).

¶ 57    The jury heard evidence that the shootings occurred around 3:30 p.m. on the Saturday of a holiday weekend in a residential neighborhood. Cars were parked on the street and in driveways. Two neighborhood residents testified that they were outside in front of their homes at the time. Reyes, the owner of one of the damaged homes, testified that his tenants were home. Moreover, Cepeda, the resident of the other damaged home, testified that he, his parents, and his girlfriend were in the house at the time of the shooting. Cepeda's testimony was corroborated by Officer Tristan Hennessy, who testified that she saw him and his father at the house soon after the shooting.

¶ 58    We conclude that a rational trier of fact, examining the evidence in the light most favorable to the State, could have found beyond a reasonable doubt that defendant knew or should have known of the presence of people inside the damaged houses. See *Jordan*, 218 Ill. 2d at 270.

¶ 59                                    2. The School

¶ 60    Defendant alternatively argues that the State failed to prove that he was within 1,000 feet of a school at the time of the shooting near 763 Columbia Street. First, defendant asserts that the evidence did not show that the building described as "Brady Elementary School" was operating as a "school" on the date of the offense. Second, he contends that, while there was evidence of the distance from the school to the house that was struck by bullets, there was no evidence of the distance from the school to defendant's location when he discharged the firearm. Defendant asks us to reduce the Class X felony conviction of aggravated discharge of a firearm within 1,000 feet of a school to an unenhanced Class 1 felony and remand the cause for a new sentencing hearing. We conclude that the State proved the locality enhancement beyond a reasonable doubt.

¶ 61    As noted, a person commits aggravated discharge of a firearm when he or she knowingly or intentionally "[d]ischarges a firearm at or into a building he or she knows or reasonably should know to be occupied and the firearm is discharged from a place or position outside that building." 720 ILCS 5/24-1.2(a)(1) (West 2010). A violation of section 24-1.2(a)(1) is ordinarily a Class 1 felony. 720 ILCS 5/24-1.2(b) (West 2010). However, a violation of section 24-1.2(a)(1) committed in a school, on the real property comprising a school, within 1,000 feet of the real property comprising a school, at a school-related activity, or on or

within 1,000 feet of any conveyance owned, leased, or contracted by a school to transport students to or from school or a school-related activity, regardless of the time of day or time of year that the offense is committed, is a Class X felony. 720 ILCS 5/24-1.2(b) (West 2010).

¶ 62    Count IV of the indictment charged defendant with committing aggravated discharge of a firearm at the residence at 763 Columbia Street, "while within 1,000 feet of Brady Elementary School." Also, the jury was instructed to find defendant guilty only if he was "within 1,000 feet of the real property comprising a school."

¶ 63    In arguing that the evidence was insufficient to prove that Brady Elementary was an active school on the date of the offense, defendant relies on *People v. Ortiz*, 2012 IL App (2d) 101261, ¶ 11. Like this case, *Ortiz* involved a 1,000-foot locality enhancement. A police officer testified that the distance between a drug transaction and "Emmanuel Baptist Church" was less than 1,000 feet, but the officer did not testify to when he measured the distance. *Ortiz*, 2012 IL App (2d) 101261, ¶ 11. The State also presented photographs of the church, but presented no testimony as to when the photographs were taken. *Ortiz*, 2012 IL App (2d) 101261, ¶ 11. We found that the evidence was insufficient to show that the offense occurred within 1,000 feet of a church, reasoning that we had "no way of knowing whether the Emmanuel Baptist Church existed" on the date of the drug transaction. *Ortiz*, 2012 IL App (2d) 101261, ¶ 11.

¶ 64    Defendant also cites *People v. Cadena*, 2013 IL App (2d) 120285, in which we relied on *Ortiz* and reversed convictions of delivery of a controlled substance within 1,000 feet of a church. *Cadena*, 2013 IL App (2d) 120285, ¶ 18. The only evidence indicating that the "Evangelical Covenant Church" was being used as a church on the dates of the three undercover drug transactions was a police officer's "affirmative response to the leading question, '[I]s that a church that is an active church?' " *Cadena*, 2013 IL App (2d) 120285, ¶ 16. We concluded that the question had no "temporal context" and could have referred to the time of trial, rather than to the dates of the offenses. *Cadena*, 2013 IL App (2d) 120285, ¶ 16.

¶ 65    The temporal context absent from *Ortiz* and *Cadena* is present in this case. Here, Officer Sullivan testified that he was familiar with the area, including Brady Elementary, because he had been serving as a general patrol officer for several years before the offense. He identified Brady Elementary on exhibit No. 28A. When asked whether Brady Elementary "is just a building that is not in operation or is it currently in operation," Officer Sullivan replied that "it's currently a school" where he "see[s] school kids." However, Nino and Alfaro, who each were familiar with the area from living there, also identified Brady Elementary on exhibit No. 28A, and each testified that the aerial photograph "fairly and accurately depict[ed]" the neighborhood on the date of the incident.

¶ 66    In *Ortiz* and *Cadena*, there was no evidence that the church existed on the date of the offense. Here, the testimony regarding exhibit No. 28A showed that Brady Elementary existed at the time of the shooting. From the testimony of Officer Sullivan, Nino, and Alfaro, the jury reasonably could infer that the building comprising Brady Elementary was operating as a school on the date of the offense.[1]

---

[1]While the evidence in this case was sufficient to prove the locality enhancement, the best method would have been for the State to simply elicit explicit testimony demonstrating a witness's personal knowledge that the school was operating as such on the date of the offense.

¶ 67 We also conclude that the State proved the distance element of the locality enhancement. Officer Sullivan measured a distance of 856 feet from the chain-link gate of the damaged home at 763 Columbia Street to the property line of the school. He also measured a distance of 959 feet from the gate of the home to the school door. He testified that the gate was about 17 feet from the sidewalk. Defendant argues that from this testimony "it is impossible to determine the actual distance from the site of the discharge (somewhere on the street) to Brady Elementary." We disagree.

¶ 68 Exhibit No. 28A shows that Nino's home at 768 Columbia Street is on the north side of the street and east of 763 Columbia Street, which is on the south side of the street. Nino testified that defendant's car traveled west on Columbia Street toward Brady Elementary. The car passed her house and paused in front of 763 Columbia, and defendant discharged the firearm. At that point, defendant was closer to Brady Elementary than was the chain-link gate of 763 Columbia Street, the point from which Officer Sullivan measured. The distance from the gate to the school was 144 feet less than 1,000, and defendant discharged the firearm from a point even closer to the school. The evidence thus supported the jury's conclusion that he committed the offense within 1,000 feet of Brady Elementary. We conclude that a rational trier of fact, examining the evidence in the light most favorable to the State, could have found beyond a reasonable doubt that defendant discharged the firearm within 1,000 feet of a school. See *Jordan*, 218 Ill. 2d at 270.

¶ 69                                  3. Jury Instructions

¶ 70 Finally, defendant argues that the jury received inaccurate instructions on the elements of aggravated discharge of a firearm. The State responds that defendant has forfeited the issue. "[A] defendant generally forfeits review of any purported jury instruction error if the defendant does not object to the instruction, or tender an alternative instruction at trial, and does not raise the instruction issue in a posttrial motion." *People v. Bannister*, 232 Ill. 2d 52, 76-77 (2008); see also *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). These requirements ensure that the trial court has the opportunity to correct a defective instruction and to prevent the challenging party from gaining an unfair advantage by failing to act when the trial court could remedy the faulty instruction and then obtaining a reversal on appeal. *Mikolajczyk v. Ford Motor Co.*, 231 Ill. 2d 516, 557-58 (2008).

¶ 71 Defendant concedes that he did not object to the instructions, tender alternative instructions, or raise the issue in a posttrial motion, and therefore, the issue is forfeited. Defendant nevertheless argues that he is entitled to a new trial on the two charges of aggravated discharge of a firearm, because the court committed plain error in instructing the jury and because trial counsel rendered ineffective assistance for failing to address the issue. We disagree.

¶ 72                                      a. Plain Error

¶ 73 The plain-error doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error where either: (1) a clear or obvious error occurs and the evidence is so closely balanced that such error threatens to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurs and is so serious that it affects the fairness of the defendant's trial and challenges the integrity of

the judicial process, regardless of the closeness of the evidence. *People v. Walker*, 232 Ill. 2d 113, 124 (2009); *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). In both instances, the burden of persuasion remains on the defendant. *People v. Herron*, 215 Ill. 2d 167, 187 (2005) (citing *People v. Hopp*, 209 Ill. 2d 1, 12 (2004)). Where there is no error at all, there can be no plain error. *People v. Johnson*, 218 Ill. 2d 125, 139 (2005).

¶ 74    Consistent with the plain-error rule, Illinois Supreme Court Rule 451(c) (eff. July 1, 2006) provides that, where a jury instruction suffers from a substantial defect, claims of error are not subject to forfeiture on appeal. An erroneous instruction constitutes a substantial defect, or plain error, when the instruction created a serious risk that the defendant was incorrectly convicted because the jury did not understand the applicable law, so as to threaten the fundamental fairness of the defendant's trial. *People v. Durr*, 215 Ill. 2d 283, 299 (2005). To prevail, the defendant need not prove that the error in the instruction actually misled the jury. *Herron*, 215 Ill. 2d at 193. "When there is error in a close case, we choose to err on the side of fairness, so as not to convict an innocent person." *Herron*, 215 Ill. 2d at 193.

¶ 75    We disagree with defendant that the evidence presented against him at trial was closely balanced, so as to permit review under the first prong of the plain error analysis. See *Walker*, 232 Ill. 2d at 124. As elaborated above, the evidence presented at trial overwhelmingly established that defendant knowingly discharged the firearm "at or into" the damaged houses, even though defendant might have intended to hit Gonzalez and Perez instead. Defendant does not dispute the evidence that he discharged the firearm from the road toward the sidewalk, with houses in the line of fire.

¶ 76    Defendant also urges us to review this issue under the second prong of the plain-error analysis. The record shows that the trial court used the IPI instructions' exact language for the offense. Consistent with IPI Criminal 4th Nos. 18.11 and 18.12, the trial court instructed the jurors as follows:

> "A person commits the offense of aggravated discharge of a firearm when he knowingly discharges a firearm *in the direction of or into* a building he knows or reasonably should know to be occupied and from a place or position outside that building.
>
> To sustain the charge of aggravated discharge of a firearm, the state must prove the following propositions:
>
> First proposition: That the defendant knowingly discharged a firearm, and
>
> Second proposition: That the defendant discharged the firearm *in the direction of or into* a building and from a place outside that building, and
>
> Third proposition: That when the defendant did so, he knew or reasonably should have known the building was occupied."[2] (Emphases added.)

¶ 77    The purpose of jury instructions is to provide the jurors with the legal principles that apply to the evidence so they can reach a correct verdict. *Hopp*, 209 Ill. 2d at 8. "Jury instructions should not be misleading or confusing." *People v. Pinkney*, 322 Ill. App. 3d 707,

---

[2]When instructing the jury on the elements of aggravated discharge of a firearm within 1,000 feet of a school, the trial court used modified versions of IPI Criminal 4th Nos. 18.11 and 18.12. The instruction containing the locality enhancement also used the phrase "in the direction of or into."

717 (2000). "[T]here must be sufficient evidence in the record to support an instruction, lest the jury be confused by issues improperly before it." *Pinkney*, 322 Ill. App. 3d at 717.

¶ 78    Rule 451(a) provides that, whenever the IPI instructions contain an applicable instruction and the court determines that the jury should be instructed on the subject, "the [IPI instruction] shall be used[ ] unless the court determines that it does not accurately state the law." Ill. S. Ct. R. 451(a) (eff. July 1, 2006). Where there is no IPI instruction on a subject on which the court determines the jury should be instructed, the court has the discretion to give a nonpattern instruction. *People v. Ramey*, 151 Ill. 2d 498, 536 (1992). The court's decision on whether to use a non-IPI instruction should not be disturbed absent an abuse of that discretion. *People v. Pollock*, 202 Ill. 2d 189, 211 (2002). Whether the court has abused its discretion in giving a particular instruction will depend on whether it was an accurate, simple, brief, impartial, and nonargumentative statement of the applicable law. Ill. S. Ct. R. 451(a) (eff. July 1, 2006); *Pollock*, 202 Ill. 2d at 211.

¶ 79    In this case, the trial court used the State's proposed instructions, which were based on IPI Criminal 4th Nos. 18.11 and 18.12. The court implicitly determined that the IPI instructions applied to the evidence and accurately reflected the law; and, in turn, Rule 451(a) mandated that the applicable pattern instructions be used.

¶ 80    In an argument related to his challenge to the sufficiency of the evidence, defendant contends that the IPI instructions do not accurately state the law, because the legislature did not intend "at or into" and "in the direction of or into" to be synonymous under section 24-1.2(a). Defendant contends that shooting "at or into" an object is different from shooting "in the direction of or into" the same object and that the instructions' use of the latter phrase created the risk that the jury found that he acted with a lesser mental state than the law requires for a finding of guilt. According to defendant, the legislature used precise language to convey the distinct concepts of (1) firing "at or into" a targeted building and (2) firing "in the direction of or into" an untargeted person or vehicle caught in the line of fire.

¶ 81    We again acknowledge the general principle that, "by employing certain language in one instance, and entirely different language in another, the legislature indicate[s] that different results were intended." *Ousley*, 235 Ill. 2d at 313-14. However, we conclude that, in this situation, the legislature intended the phrases in the respective subsections to operate in the same way such that "in the direction of or into" has the same meaning as "at or into," and therefore the IPI instructions' use of the phrases interchangeably is not an inaccurate statement of the law.

¶ 82    As noted, our conclusion is consistent with the relevant dictionary definition of "at," which is "used as a function word to indicate that which is the *goal* of an action or that toward which an action or motion is *directed*." (Emphases added.) Webster's Third New International Dictionary 136 (1993). Defendant defines "at" in terms of acting with a goal, but that implies acting with a mental state that conflicts with the express mental state requirement of section 24-1.2(a)(1). Consistent with our analysis of the sufficiency of the evidence, we harmonize IPI Criminal 4th Nos. 18.11 and 18.12 with section 24-1.2(a)(1) by defining "at" in terms of "directing" an action toward an object. Webster's Third New International Dictionary 640 (1993) ("direct" means "to cause to turn, move or point undeviatingly or to follow a straight course with a particular destination along a fixed path"). The legislature must have intended this definition of "at or into," which does not conflict with the "knowing" mental state required for a finding of guilt. When defendant discharged

the firearm "at or into" the houses, he was knowingly directing the bullets toward the houses, even though striking them might not have been his goal. In other words, he discharged the firearm "in the direction of or into" the houses, which is consistent with the IPI instructions that the court used. We conclude that the legislature intended the phrases "at or into" and "in the direction of or into" to have the same meaning, as recognized by the drafters of the IPI and approved by the supreme court committee on pattern jury instructions in criminal cases.

¶ 83    Defendant's position is that using the phrase "in the direction of or into" created a risk that the jury found that he shot in the direction of the buildings but not "at" them, and therefore the State's burden of proof was diminished in this case. We disagree. The State introduced overwhelming evidence that defendant knowingly shot at or into the buildings and that the bullets actually struck them.

¶ 84                                     b. Ineffective Assistance

¶ 85    Following a similar rationale, we conclude that defense counsel's failure to challenge the State's instructions did not deny defendant the effective assistance of counsel. Both the United States and Illinois Constitutions guarantee a defendant the right to effective assistance of counsel. See U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8. The purpose of this guarantee is to ensure that the defendant receives a fair trial. *Strickland v. Washington*, 466 U.S. 668, 684-85 (1984); *People v. Pineda*, 373 Ill. App. 3d 113, 117 (2007). The ultimate focus of the inquiry is on the fundamental fairness of the challenged proceedings. *Strickland*, 466 U.S. at 696; *Pineda*, 373 Ill. App. 3d at 117. "However, there is a strong presumption of outcome reliability, so to prevail, a defendant must show that counsel's conduct 'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' " *Pineda*, 373 Ill. App. 3d at 117 (quoting *Strickland*, 466 U.S. at 686).

¶ 86    Claims of ineffective assistance of counsel are generally evaluated under the two-part test set forth in *Strickland*, 466 U.S. at 687, and adopted by our supreme court in *People v. Albanese*, 104 Ill. 2d 504, 525-26 (1984). *People v. Harris*, 225 Ill. 2d 1, 20 (2007). Under *Strickland*, defense counsel was ineffective only if (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's error prejudiced the defendant. Failure to establish either prong is fatal to the claim. *Strickland*, 466 U.S. at 687; *Pineda*, 373 Ill. App. 3d at 117.

¶ 87    We assess counsel's performance by using an objective standard of competence under prevailing professional norms. *People v. Ramsey*, 239 Ill. 2d 342, 433 (2010). To establish deficient performance, the defendant must overcome the strong presumption that counsel's action or inaction was the result of sound trial strategy. *Ramsey*, 239 Ill. 2d at 433. Counsel's strategic choices that are made after investigation of the law and the facts are virtually unassailable. *Ramsey*, 239 Ill. 2d at 433.

¶ 88    Defense counsel's decision not to challenge the discrepancy between IPI Criminal 4th Nos. 18.11 and 18.12 and section 24-1.2(a)(1) did not constitute deficient performance, as the IPI instructions accurately stated the law and an objection to the instructions would have lacked merit.

¶ 89    Furthermore, defendant was not prejudiced by the IPI instructions. To establish prejudice, the defendant must show that " 'there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different.' " *Pineda*, 373 Ill. App. 3d at 117 (quoting *Strickland*, 466 U.S. at 694). " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Pineda*, 373 Ill. App. 3d at 117 (quoting *Strickland*, 466 U.S. at 694). The prejudice component of *Strickland* entails more than an "outcome-determinative test"; rather, the defendant must show that counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair. *People v. Richardson*, 189 Ill. 2d 401, 411 (2000); *Pineda*, 373 Ill. App. 3d at 117. Here, the evidence overwhelmingly established that defendant knowingly discharged the firearm "at or into" the damaged houses, and even though the IPI instructions deviated from the language of section 24-1.2(a)(1), the court did not err in using the instructions because they conveyed the same meaning as the statute. In the absence of any error, counsel did not render ineffective assistance, and therefore defendant is not entitled to a new trial on the charges of aggravated discharge of a firearm.

¶ 90                              III. CONCLUSION

¶ 91        We hold that (1) the State proved beyond a reasonable doubt that defendant knowingly committed felony criminal damage to property, which formed the basis of the armed violence convictions, when he discharged the firearm and struck the two vehicles; (2) the State proved beyond a reasonable doubt that defendant knowingly discharged the firearm "at or into" the houses that were struck and that defendant knew or should have known that they were occupied; (3) the State proved beyond a reasonable doubt that Brady Elementary was operating as a school on the date of the offense and that defendant discharged the firearm within 1,000 feet of the school; and (4) the trial court did not err in using IPI Criminal 4th Nos. 18.11 and 18.12, which instructed the jury that a person commits aggravated discharge of a firearm by firing "in the direction of or into" a building. Accordingly, the judgment of the circuit court of Kane County is affirmed.

¶ 92        Affirmed.