2021 IL App (2d) 190378-U
No. 2-19-0378
Order filed July 6, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 18-CF-1983 |
| WALTER MALONE, | ) ) ) | Honorable Donald M. Tegeler, Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE McLAREN delivered the judgment of the court.
Justices Schostok and Birkett concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The trial court did not abuse its discretion in denying defendant's request for a bill of particulars, nor or in refusing his non-IPI instruction on weighing the identification of a witness.

¶ 2     The jury found defendant, Walter Malone, guilty of two counts of aggravated battery in a place of public accommodation (720 ILCS 5/12-30.5(c) (West 2018)) and two counts of domestic battery (720 ILCS 5/12-3,2(a)(1), (a)(2) (West 2018)). The trial court merged the convictions into a single conviction of aggravated battery and sentenced defendant to 4½ years of imprisonment. Defendant appeals from the trial court's judgment, arguing that the court abused its discretion (1)

when it denied his request for a bill of particulars as to the domestic battery charges and (2) when it refused his non-Illinois Pattern Jury Instruction. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      In the early evening of October 5, 2018, defendant's girlfriend of a year, Annel Melchor, drove him home from her house. Defendant and Melchor had been drinking and argued during the drive and continued arguing when they arrived at the parking lot to defendant's apartment. Defendant was angry because Melchor had rejected his sexual advances and would not take him to another location. She did not want him to have her keys, because her children were in the car.

¶ 5      The parking lot was shared with or adjacent to a Dollar General parking lot. A physical altercation occurred, resulting in defendant's biting or scratching Melchor's upper lip. Melchor fled to the Dollar General store and asked the cashier to call 911. Defendant followed Melchor into the store, where a shopper, Yesenia Deltoro, witnessed him force Melchor to the floor and try to drag her out. Deltoro yelled at defendant not to touch Melchor. The attack lasted less than a minute, and defendant left the store and returned twice before finally exiting. The store's surveillance system captured the struggle, as well as the cashier's making a phone call.

¶ 6      When patrol officer Coleman arrived on the scene, Sergeant Corrigan was already there and speaking to defendant. Coleman located Melchor, who was with Deltoro. Coleman noted fresh bleeding from a scratch above Melchor's swollen lip. Coleman photographed the lip injury. Defendant's physical contact left Melchor with a scar on her upper lip and bruises on her arms.

¶ 7      Coleman also spoke to Deltoro, who described defendant and then saw him, unhandcuffed, as he spoke with Corrigan about 100 feet from the store. She identified him as the person she saw both inside and outside the store.

¶ 8    After speaking with the cashier at the Dollar General, Coleman spoke to defendant. Defendant appeared to be intoxicated, although Melchor had not appeared to be. Because this was a domestic incident, Coleman did not find fingerprints or DNA to be relevant. Defendant was placed in custody.

¶ 9    The grand jury charged defendant by indictment with two counts of aggravated battery in a place of public accommodation (720 ILCS 5/12-30.5(c) (West 2018)) and two counts of domestic battery (720 ILCS 5/12-3,2(a)(1), (a)(2) (West 2018. Following a trial, the jury convicted defendant of all four counts. The court denied defendant's posttrial motion but, following a sentencing hearing, merged the convictions into a single conviction of aggravated battery and sentenced defendant to 4½ years of imprisonment.

¶ 10                                II. ANALYSIS

¶ 11   Defendant first argues that the trial court erred when it denied his request for a bill of particulars as to the domestic battery charges. Defendant contends that the domestic-battery counts in the indictment "simply alleged that [he] 'struck' Melchor 'on or about the body' *** , without specifying where the alleged strike occurred or what it involved." According to defendant, a bill of particulars would have clarified that he was charged with only his conduct inside the Dollar General and then he could have moved to suppress evidence of the alleged bite in the car as a prejudicial other crime.

> "The purpose of a bill of particulars is to give the defendant notice of the charge and to inform the defendant of the particular transactions in question, thus enabling preparation of a defense. [Citation.] There is no need for a bill of particulars when the indictment sufficiently informs the defendant of the charged offense. [Citation.] A trial court's decision on a motion for a bill of particulars is reviewed for abuse of discretion.

[Citation.] An abuse of discretion will be found only when the trial court's decision is arbitrary and no reasonable person would adopt the view of the court. [Citation.]" *People v. Woodrum*, 223 Ill. 2d 286, 301-02 (2006).

¶ 12    In his motion for a bill of particulars, defendant stated that the allegations in discovery and the grand jury transcript alleged "two distinct domestic batteries": (1) defendant bit Melchor and pulled her hair in her vehicle; and (2) after Melchor ran into the Dollar General, defendant followed her, punched her in the face, and tried to drag her out of the store. Defendant sought clarification as to whether the State was prosecuting him for the battery in the car in the parking lot or inside the store. Additionally, because the indictment did not mention a "bite," defendant asked the court to conduct a balancing test and deny the admission of the prior uncharged bad act at trial.

¶ 13    At the hearing on defendant's motion, the State argued that the batteries were a continuous, ongoing incident that began with the physical contact in the car and continued into the store. See *People v. Adkins*, 239 Ill.2d 1, 32 (2010) (evidence of a defendant's other bad acts is admissible where those acts, even if uncharged, are part of the "continuing narrative which concern the circumstances attending the entire transaction and *** do not concern separate, distinct and disconnected crimes." (Internal quotation marks omitted.)). The trial court found that the domestic battery charges could be continuing. It further determined that since the State's continuing-act theory included a biting in the car, and defendant's theory was that the biting never occurred, defendant was on notice to defend against the allegations of domestic battery in the car as well as in the store. Defendant ultimately agreed with the court. Accordingly, defendant was sufficiently informed of the charged offense, and we cannot say the court abused its discretion in denying defendant's request for a bill of particulars.

¶ 14    Defendant further argues that the jury was confused by the wording of the indictment in light of the State's repeated references to defendant's having bitten Melchor. Defendant cites as proof of jury confusion the fact that during deliberations the jury inquired "[c]an the battery that happened in the store satisfy all charges?"

¶ 15    With respect to domestic battery, the jury had been instructed that a person commits domestic battery "when he knowingly and *by any means* causes bodily harm to or makes physical contact of an insulting or provoking nature." The court's reply to the inquiry indicated that the jury had heard all the evidence and been given the applicable law, that it was for them to determine whether the State met its burden of proof, and that they should continue to deliberate. Defendant approved the court's reply, and the jury then found defendant guilty of all four counts. We are not persuaded that the jury was confused.

¶ 16    Finally, we note that at the sentencing hearing, the court agreed with defendant that under one-act, one-crime principles, he should have been convicted of only the first count of aggravated battery. See *People v. Jimerson*, 404 Ill. App. 3d 621, 635 (2010) ("Under the one-act, one-crime rule, a defendant may be convicted for one crime resulting from a single act."). Accordingly, the court merged counts II through IV into count I, sentencing defendant only on one count of aggravated battery—bodily harm. This merger was consistent with the court's finding that the evidence of a bite was part of a continuing battery. Defendant does not challenge the court's sentencing decision on appeal.

¶ 17    Defendant's second issue on appeal is whether the court erred in refusing his modified version of Illinois Pattern Jury Instruction (IPI) 3.15A (Illinois Pattern Jury Instructions, Criminal, No. 3.15 (4th ed. 2000) (hereinafter IPI Criminal 4th)).

> "The purpose of jury instructions is to provide the jurors with the legal principles that apply to the evidence so they can reach a correct verdict. Jury instructions should not be misleading or confusing. There must be sufficient evidence in the record to support an instruction, lest the jury be confused by issues improperly before it." (Citations and internal quotation marks omitted.) *People v. Rodriguez*, 2014 IL App (2d) 130148, ¶ 77.

The decision to give or refuse a non-IPI instruction should not be disturbed absent an abuse of discretion; whether the court has abused its discretion in giving a particular instruction "will depend on whether it was an accurate, simple, brief, impartial, and nonargumentative statement of the applicable law." *Rodriguez*, 2014 IL App (2d) 130148, ¶ 78 (citing Ill. S.Ct. R. 451(a) (eff. April 8, 2013)).

¶ 18    According to defendant, his non-IPI instruction would have assisted the jury in determining what weight to give eyewitness Deltoro's identification of him as the perpetrator. IPI 3.15A advises the jury that it has evidence before it that a witness made an identification of the defendant following a live or photographic "lineup conducted by [a] law enforcement [(agency) (agencies)] relating to the offense(s) charged in this case." Defendant's modified instruction states that the jury has evidence before it that a witness made an identification of the defendant "following a live *show-up* conducted by a law enforcement agency relating to the offenses charged in this case." A "showup" is "a procedure in which a suspected perpetrator is presented to the eyewitness at, or near, a crime scene for the purpose of obtaining an immediate identification." 725 ILCS 5/107A-0.1 (West 2018). Both versions of the instruction direct the jury, in determining the weight to be given this evidence, to "consider all of the circumstances under which the identification was made, including, but not limited to, the procedures used or not used" by the law enforcement agency.

¶ 19     The problem with defendant's instruction is that the evidence does not support it. Deltoro did not make an identification of defendant following a live show-up conducted by the police. Rather, defendant saw defendant in the store and engaged with him, yelling at him not to touch Melchor. Immediately thereafter, she described him as a black man with braids. Two to three minutes later, she saw defendant again, in conversation with Sergeant Corrigan about 50 to 100 feet from the store. This sighting occurred while she was speaking with Officer Coleman. Coleman testified that during their conversation, Deltoro pointed out defendant and said, "That's him." The facts show that the police did not present defendant to Deltoro for identification. Defendant's non-IPI instruction would have encouraged the jury to consider a distorted version of the evidence when assessing the credibility of Deltoro's identification.

¶ 20     Defendant also proffered IPI 3.15, which was given. IPI 3.15 states:

> "When you weigh the identification testimony of a witness, you should consider all the facts and circumstances in evidence, including, but not limited to, the following:
>
> [1] The opportunity the witness had to view the offender at the time of the offense.
>
> [2] The witness's degree of attention at the time of the offense.
>
> [3] The witness's earlier description of the offender.
>
> [4] The level of certainty shown by the witness when confronting the defendant.
>
> [5] The length of time between the offense and the identification confrontation."

IPI Criminal 4th No. 3.15.

¶ 21     We believe that IPI 3.15 adequately instructed the jury on the weighing of Deltoro's identification. See *People v. Bannister*, 232 Ill. 2d 52, 81 (2008) ("If IPI instructions contain an applicable instruction on a subject about which the trial court determines the jury should be instructed, the trial court must use that instruction, unless the court determines that the instruction

does not accurately state the law." (citing Ill. S. Ct. R. 451(a) (eff. Apr. 8, 2013)). The trial court's determination that IPI 3.15 accurately stated the law was correct. See *People v. Polk*, 407 Ill. App. 3d 80, 109 (2010) (quoting *People v. Piatkowski*, 225 Ill. 2d 551, 567 (2007)) ("the five factors listed in the instruction are an accurate statement of the law 'for assessing the reliability of identification testimony.' "). We find no abuse of discretion in refusing defendant's modified version of IPI 3.15A.

¶ 22                                    III. CONCLUSION

¶ 23    The judgment of the circuit court of Kane County is affirmed.

¶ 24    Affirmed.