2024 IL App (2d) 230268-U
No. 2-23-0268
Order filed May 13, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kendall County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 21-CF-122 |
| ISAIAH J. WILLIAMS, | ) ) | Honorable Joseph R. Voiland, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court.
Presiding Justice McLaren and Justice Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Jury instructions on threatening a public official—here, a sworn enforcement officer—did not conflict even though the issues instruction expressly required a specific threat to the officer while the definition instruction contained no such requirement. Despite the difference, the instructions were meant to be given together. Nothing in the definition instruction negated the specific-threat requirement in the issues instruction; rather, the former was meant to generally define the offense while the latter was intended to specify the precise proof requirements.

¶ 2    Defendant, Isaiah J. Williams, appeals his conviction, following a jury trial, of threatening a public official, specifically, a sworn law enforcement officer (720 ILCS 5/12-9(a)(1)(i) (West 2020)). He contends that (1) the trial court inaccurately informed the jury of the applicable law—

and committed plain error—when the issues instruction for threatening a public official required the State to prove that the alleged threat contained specific facts indicative of a unique threat to the victim, a sworn law enforcement officer, but the definition instruction for the offense mentioned no such requirement; and (2) his trial counsel was ineffective for failing to challenge the instructions as given. Because the definition and issues instructions were complementary, not inconsistent, and accurately informed the jury of what the State needed to prove, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     The State charged defendant with one count of aggravated domestic battery (720 ILCS 5/12-3.3(a-5) (West 2020)) and one count of threatening a public official.

¶ 5     The following facts were developed at defendant's jury trial. On April 29, 2021, Kendall County sheriff's deputy Nicholas Albarran responded to a domestic battery call at the residence of defendant and the alleged victim, Teresa Sanchez. When he arrived, Albarran saw defendant and Sanchez outside between their apartment and the parking lot.

¶ 6     Albarran testified that when he tried to speak with Sanchez, defendant became aggressive and hostile toward Albarran. At one point, defendant referred to Albarran as an "alpha male" and said he wanted to get "physical right there."

¶ 7     After speaking with Sanchez inside the apartment, Albarran exited, arrested defendant, handcuffed him, and put him in the back of the squad car. Defendant continued to be confrontational inside the squad car and told Albarran to remove the handcuffs so they could "see who the real man was." Defendant called Albarran a "bitch" several times. Defendant then began banging his head against the partition and the side window of the squad car. When Albarran told defendant to stop, defendant said that "he would f*** [him] up if [he] took [the] handcuffs off."

¶ 8 Albarran transported defendant to the Kendall County jail. On the way to the jail, defendant said that he wished that Albarran would be shot. Defendant also stated that he was HIV-positive and threatened to spit on Albarran.

¶ 9 When Albarran arrived at the jail, several jail personnel assisted in taking defendant into the booking area. As defendant was being escorted, he told Albarran that, if he saw him on the street, he would "f*** [him] up." As Albarran was leaving to resume his patrol, Deputy Abel told Albarran that defendant had said that, if he ever saw Albarran on the street, he would "f*** kill [him]" and "slash [his] throat." Albarran's squad-car and body-camera videos were admitted into evidence and played for the jury. Both videos contained statements by defendant consistent with Albarran's testimony.

¶ 10 Defendant also testified. He denied that he "intend[ed] on [*sic*] any threats to [Albarran]." However, defendant admitted that he (1) said he would spit on Albarran, (2) told Albarran that he was a racist and that he hoped he would be shot, and (3) said he would kill Albarran and slash his throat.

¶ 11 On cross-examination, defendant admitted calling Albarran a "bitch" and saying that, if he were not handcuffed, he would "f*** [him] up." He further admitted that, while in the squad car, he said, "I really hope to God that someone f*** shoots you." He also admitted that, as he entered the booking area, he told Albarran that, if he saw him on the street, he would "f*** [him] up."

¶ 12 During closing argument, the prosecutor told the jury that the trial court would instruct them on the offense of threatening a public official. The prosecutor added that the State would have to prove, among other things, that "the threat to [Albarran] contained specific facts indicative of a unique threat to [Albarran] and not a generalized threat of harm." As evidence of specific

facts indicating a unique threat, the prosecutor pointed to defendant's threat that, if he ever saw Albarran on the street, he would kill him and slash his throat.

¶ 13    The State tendered to the trial court both a definition instruction and an issues instruction on the charge of threatening a public official. State's instruction No. 15, the definition instruction, was based on Illinois Pattern Jury Instructions, Criminal, No. 11.49 (approved May 2, 2014) (IPI Criminal No. 11.49). State's instruction No. 17, the issues instruction, was based on Illinois Pattern Jury Instructions, Criminal, No. 11.50 (approved May 2, 2014) (IPI Criminal No. 11.50). Defense counsel indicated that he had no objection to either instruction. When asked if he had any of his own instructions to offer, counsel responded that he did not, because the State had "corrected the ones that needed to be corrected."[1]

¶ 14    The definition instruction read:

"A person commits the offense of threatening a public official when he knowingly delivers or conveys, directly or indirectly, to a public official by any means a communication containing a threat that would place the public official in reasonable apprehension of immediate or future bodily harm; and the threat was conveyed because of the performance or nonperformance of some public duty."

¶ 15    The issues instruction stated that, to prove defendant guilty of threatening a public official, the State needed to prove, among other things, that defendant conveyed a threat to Albarran and

---

[1]Earlier, during a preliminary review of jury instructions before jury selection, the State acknowledged that some propositions were missing from the issues instruction. As noted, defense counsel ultimately accepted both the definition and issue instructions.

that the threat "contained specific facts indicative of a unique threat to [Albarran] and not a generalized threat of harm."

¶ 16    The jury found defendant not guilty of aggravated domestic battery but guilty of threatening a public official. Defendant filed a motion for a new trial but did not challenge either instruction on threatening a public official. Following the denial of the posttrial motion, the trial court sentenced defendant to 18 months' probation, and defendant filed this timely appeal.

¶ 17                                    II. ANALYSIS

¶ 18    On appeal, defendant contends that (1) the trial court committed plain error in instructing the jury because the definition and issues instructions conflicted on whether the State had to prove that the threat to Albarran contained specific facts indicative of a unique threat to Albarran and not a generalized threat of harm, and (2) trial counsel was ineffective for failing to challenge the instructions as given.

¶ 19    To prove the offense of threatening a public official as charged here, the State had to establish, *inter alia*, that defendant conveyed "a threat that would place [Albarran] in reasonable apprehension of immediate or future bodily harm." 720 ILCS 5/12-9(a)(1)(ii) (West 2020). Because Albarran was a sworn law enforcement officer, the State also had to prove that the threat "contain[ed] specific facts indicative of a unique threat to the person *** of [Albarran] and not a generalized threat of harm." 720 ILCS 5/12-9(a-5) (West 2020).

¶ 20    "A jury instruction error, although one of constitutional magnitude, is not necessarily a structural error and therefore does not result in automatic reversal." *People v. Hartfield*, 2022 IL 126729, ¶ 42. If the error was forfeited, then plain error analysis applies. *Hartfield*, 2022 IL 126729, ¶ 42. Generally, a defendant forfeits review of any putative jury instruction error if he

(1) does not object to the instruction or offer an alternative instruction at trial and (2) does not challenge the instruction in a posttrial motion. *Hartfield*, 2022 IL 126729, ¶ 44.

¶ 21 Here, defendant did not object to either instruction on threatening a public official or offer an alternative instruction. Thus, he forfeited the issue he now seeks to raise. However, he asserts that the issue is reviewable as plain error.

¶ 22 Illinois Supreme Court Rule 451(c) (eff. Apr. 8, 2013) provides for review of unpreserved jury instruction errors. Under this rule, "substantial defects" in jury instructions "are not [forfeited] by failure to make timely objections thereto if the interests of justice require." Ill. S Ct. R. 451(c) (eff. Apr. 8, 2013). Rule 451(c) is coextensive with the plain error clause of Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967), and we construe those rules identically. *Hartfield*, 2022 IL 126729, ¶ 49. The plain error clause of Rule 615(a) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967).

¶ 23 Plain error occurs where (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence. *Hartfield*, 2022 IL 126729, ¶ 50. In the first instance, the defendant must show that a clear or obvious error occurred and that the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him. *Hartfield*, 2022 IL 126729, ¶ 50. In the second instance, the defendant must show that clear or obvious error occurred and that the error was so serious that it affected the trial's fairness and challenged the judicial process's integrity. *Hartfield*, 2022 IL 126729, ¶ 50. In both instances, the burden of persuasion remains with the defendant. *Hartfield*, 2022 IL 126729, ¶ 50. A jury instruction error "rises to the level of plain error only when it creates a serious risk that the jurors incorrectly convicted the defendant because they did not understand the applicable law, so

as to severely threaten the fairness of the trial." (Internal quotation marks omitted.) *Hartfield*, 2022 IL 126729, ¶ 50.

¶ 24 Inherent in plain error analysis is an initial determination of whether any error occurred. *Hartfield*, 2022 IL 126729, ¶ 51. This entails determining "whether the instructions, taken as a whole, fairly, fully, and comprehensively apprised the jury of the relevant legal principles." (Internal quotation marks omitted.) *Hartfield*, 2022 IL 126729, ¶ 51. "Although jury instructions should be considered as a whole and not in isolation, this proposition rests on the assumption that the jury instructions clearly and properly informed the jurors of the law." (Internal quotation marks omitted.) *Hartfield*, 2022 IL 126729, ¶ 51. "When the instructions are confusing and create a situation in which the jurors believe they are forced to choose between conflicting elements within the instructions, *** the instructions as a whole cannot be considered curative of the confusion." *People v. Alvine*, 173 Ill. 2d 273, 290 (1996). We review *de novo* whether a jury instruction accurately conveys the applicable law to the jury. *Hartfield*, 2022 IL 126729, ¶ 51.

¶ 25 Here, defendant asserts that the jury instructions on threatening a public official conflicted in that (1) the issues instruction stated that the threat to a sworn law enforcement officer must contain specific facts indicative of a unique threat to the officer and not a generalized threat of harm but (2) the definition instruction mentioned no such requirement. Defendant concludes that it was error to give the instructions as worded. We disagree.

¶ 26 The definition instruction generally defined the offense of threatening a public official. As defendant notes, that instruction did not include any language regarding the additional element, applicable to Albarran as a sworn law enforcement officer, that the threat must contain specific facts indicative of a unique threat to Albarran and not a generalized threat of harm. See 720 ILCS

5/12-9(a-5) (West 2020). Had the definition instruction been the only instruction given on the offense of threatening a public official, it would have been insufficient.

¶ 27    However, the issues instruction explicitly required the State to prove beyond a reasonable that, *inter alia*, "the threat to [Albarran] contained specific facts indicative of a unique threat to [Albarran] and not a generalized threat of harm." That language accurately conveyed the additional element required under the statute where the public official is a sworn law enforcement officer. See 720 ILCS 5/12-9(a-5) (West 2020). Thus, the issues instruction clearly informed the jury that, before it could find defendant guilty of threatening a public official, it must find that defendant's threat contained specific facts indicative of a unique threat to Albarran and not merely a generalized threat of harm.

¶ 28    More importantly, the definition instruction and the issues instruction were not in conflict. Specifically, there was no language in the definition instruction to suggest that the jury must find defendant guilty, even absent a threat that contained specific facts indicative of a unique threat to Albarran. Such language would have created a direct conflict between the definition and issues instructions as to what the State had to prove to establish the offense of threatening a public official (sworn law enforcement officer). As it stands, however, the definition instruction merely provided the jury with the general definition of the offense, while the issues instruction informed the jury of what it must find in this particular case. Thus, the two instructions did not conflict but complemented each other. Thus, there was no clear and obvious error in giving the two instructions as written.

¶ 29    We further note that the definition and issues instructions mirrored the pattern jury instructions for the offense of threatening a public official (sworn law enforcement officer). See IPI Criminal Nos. 11.49 and 11.50. Rule 451(a) provides:

"Whenever Illinois Pattern Jury Instructions, Criminal *** contains an instruction applicable in a criminal case, giving due consideration to the facts and the governing law, and the court determines that the jury should be instructed on the subject, the IPI Criminal *** instruction shall be used, unless the court determines that it does not accurately state the law." Ill. S. Ct. R. 451(a) (eff. July 1, 2006); see *People v. Rodriguez*, 2014 IL App (2d) 130148, ¶ 78.

Notably, both IPI Criminal No. 11.49, on which the definition instruction was based, and IPI Criminal No. 11.50, on which the issues instruction was based, provide for alternative wording based on the nature of the offense. The committee note to IPI Criminal No. 11.50 states that, "when the public official is a sworn law enforcement officer, social worker, caseworker, investigator or human service provider," the instruction must contain the "Fifth Proposition," which is that the threat contained specific facts indicative of a unique threat to the public official and not a generalized threat of harm. IPI Criminal No. 11.50, Committee Note (approved May 2, 2014). IPI Criminal Nos. 11.49 and 11.50 must be given together. See IPI Criminal No. 11.50, Committee Note (approved May 2, 2014); IPI Criminal No. 11.50, Committee Note (approved May 2, 2014). IPI Criminal No. 11.49, however, makes no provision for that additional proposition. Thus, the committee obviously believed that, when IPI Criminal Nos. 11.49 and 11.50 are given together—and the latter is properly adapted where the alleged threat is to a sworn law enforcement officer—the jury will be accurately informed that the State must prove the threat contained specific facts showing a unique threat to the public official, not a generalized threat of harm. This examination of the pattern instructions confirms our conclusion that no clear and obvious instructional error occurred.

¶ 30    In arguing that the two instructions conflicted, defendant relies primarily on *People v. Warrington*, 2014 IL App (3d) 110772, and *People v. Hale*, 2012 IL App (4th) 100949. Neither of those cases supports defendant.

¶ 31    In *Warrington*, the Third District held that the instructions for threatening a public official (a sworn law enforcement officer) were "conflicting" where (1) the issues instruction required the State to prove that the threat placed the public official in reasonable apprehension of immediate or future bodily harm but (2) the definition instruction contained no such language. *Warrington*, 2014 IL App (3d) 110772, ¶¶ 29-30. We respectfully disagree with the Third District's holding, as the definition instruction there did not contain any language negating the need to find that the threat caused a reasonable apprehension of bodily harm, as the issues instruction provided. Rather, just as here, the two instructions were complementary, not conflicting. We are not obliged to follow a decision from another district of our appellate court. *People v. Abusharif*, 2021 IL App (2d) 191031, ¶ 17.

¶ 32    In *Hale*, the defendant was charged with threatening a public official (a sworn correctional officer). *Hale*, 2012 IL App (4th) 100949, ¶ 4. The definition instruction did not include any language about the need to prove that the threat contained specific facts indicative of a unique threat to the correctional officer, not just a generalized threat of harm. *Hale*, 2012 IL App (4th) 100949, ¶ 21. The Fourth District held that it was plain error to give the definition instruction because it failed to accurately convey the applicable law. *Hale*, 2012 IL App (4th) 100949, ¶¶ 21, 24. The State conceded the error but asserted that reversal was inappropriate because the evidence on the threat element was overwhelming. *Hale*, 2012 IL App (4th) 100949, ¶ 22. In rejecting that argument, the court held that, because the issues instruction likewise lacked any language regarding the need to prove a specific threat, the error met the second prong of the plain error

doctrine because it undermined the fairness of the trial and challenged the integrity of the judicial process. *Hale*, 2012 IL App (4th) 100949, ¶¶ 23-25.

¶ 33  *Hale* is distinguishable because here the issues instruction clearly informed the jury that it must find that the threat contained specific facts showing a unique threat to Albarran.

¶ 34  Alternatively, even if we were to hold that it was a clear and obvious error to give the definition instruction without language incorporating the statutory requirement of a specific threat to Albarran, such an error would not have affected the fairness of the trial or challenged the integrity of the judicial process. See *Hartfield*, 2022 IL 126729, ¶ 50. As discussed, although the definition instruction did not require proof of a specific threat to Albarran, the issues instruction clearly did. Nor did the definition instruction directly conflict with the issues instruction by informing the jury that it must convict regardless of proof of a specific threat. *Cf. Hartfield*, 2022 IL 126729, ¶¶ 59-61 (finding plain error where the trial court's answer to a jury question about an essential element of the offense *directly* conflicted with the written jury instruction). Further, during closing argument, the State noted that it must prove, and the jury must find, that the threat to Albarran contained specific facts indicative of a unique threat to Albarran and not a generalized threat of harm. Thus, even if there were clear and obvious instructional error, it did not amount to second-prong plain error.[2]

¶ 35                    III. CONCLUSION

¶ 36  For the reasons stated, we affirm the judgment of the circuit court of Kendall County.

_____

[2]Also, because there was no clear and obvious error, trial counsel was not ineffective for failing to challenge the instructions as given. See *People v. Carr-McKnight*, 2020 IL App (1st) 163245, ¶ 93.

¶ 37    Affirmed.