**2025 IL 130779**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 130779)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
ISAIAH J. WILLIAMS, Appellant.

*Opinion filed November 20, 2025.*

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.

Chief Justice Neville and Justices Theis, Overstreet, Holder White, Rochford, and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1 The principal issue presented in this appeal is whether the trial court committed plain error when it tendered Illinois Pattern Jury Instructions, Criminal, Nos. 11.49 and 11.50 (approved May 2, 2014) (hereinafter IPI Criminal Nos. 11.49 and 11.50), to the jury in the defendant's trial for threatening a public official. The appellate court held that the instructions correctly set forth the applicable law and, therefore,

the Kendall County circuit court did not err in tendering them to the jury. 2024 IL App (2d) 230268-U. For the reasons that follow, we affirm the judgment of the appellate court.

¶ 2                                                              BACKGROUND

¶ 3         On April 29, 2021, a Kendall County sheriff's deputy, Nicholas Albarran, responded to a domestic battery call at the residence of the defendant, Isaiah Williams, and his girlfriend, Teresa Sanchez. After speaking with Sanchez, Deputy Albarran arrested Williams. During his arrest and subsequent transportation to the Kendall County Jail, Williams made repeated threats to Deputy Albarran.

¶ 4         Williams was charged with one count of aggravated domestic battery and one count of threatening a public official under section 12-9 of the Criminal Code of 2012 (Code) (720 ILCS 5/12-9 (West 2020)). That provision states, in relevant part:

> "(a) A person commits threatening a public official *** when:
>
>     (1) that person knowingly delivers or conveys, directly or indirectly, to a public official *** by any means a communication:
>
>         (i) containing a threat that would place the public official *** in reasonable apprehension of immediate or future bodily harm, sexual assault, confinement, or restraint; ***
>
>         *** and
>
>         (2) the threat was conveyed because of the performance or nonperformance of some public duty ***." *Id.*

A "public official" under section 12-9 of the Code includes a "sworn law enforcement or peace officer." *Id.* § 12-9(b)(1). In addition, subsection (a-5) of section 12-9 states that, "[f]or purposes of a threat to a sworn law enforcement officer, the threat must contain specific facts indicative of a unique threat to the person, family or property of the officer and not a generalized threat of harm." *Id.* § 12-9(a-5).

¶ 5    At trial, Deputy Albarran testified that, when he first arrived at Williams's home, Williams was hostile and aggressive. Williams called the deputy "an alpha male" and asked him if he wanted "to get[ ] physical right there." Later, after being handcuffed, Williams told Deputy Albarran to take off the handcuffs "to see who the real man was." Williams told Deputy Albarran he was making these threatening comments because the deputy was "weak," and, throughout the encounter, Williams repeatedly called the deputy a "bitch." When Williams was placed in Deputy Albarran's squad car, he began banging his head against the car's partition and side window and told the deputy that "he would fuck [the deputy] up if [he] took [Williams's] handcuffs off." Williams also stated that he wished the deputy would get shot. Williams's statements to Deputy Albarran were captured on video recordings made by the deputy's squad car and body-worn cameras. Those recordings were played for the jury.

¶ 6    Deputy Albarran also testified that, after he released Williams to personnel at the Kendall County Jail and was waiting outside the building to leave, another sheriff's deputy came out of the jail and showed Deputy Albarran video footage from his body-worn camera. In that footage, Williams stated that "if he saw [Deputy Albarran] on the street, that he would fucking kill [him], and that he would slash [his] throat if he caught [him] on the street." Williams himself later testified at trial and admitted making this statement.

¶ 7    In its closing argument to the jury, the State listed the propositions it had to establish beyond a reasonable doubt to prove Williams guilty of threatening a public official, including the requirement set forth in subsection (a-5) of section 12-9 of the Code that a threat to a sworn law enforcement officer must contain specific facts indicative of a unique threat to the officer and not a generalized threat of harm. The State stressed that this requirement was met in this case, in particular, because of Williams's statement that, if he ever saw Deputy Albarran on the street, he would slash his throat and kill him.

¶ 8    After closing arguments, the trial court instructed the jury. Relevant here, the trial court tendered to the jury IPI Criminal No. 11.49 as follows:

> "A person commits the offense of threatening a public official when he knowingly delivers or conveys, directly or indirectly, to a public official by any means a communication containing a threat that would place the public official

in reasonable apprehension of immediate or future bodily harm; and the threat was conveyed because of the performance or nonperformance of some public duty."

See IPI Criminal No. 11.49. The trial court also tendered to the jury IPI Criminal No. 11.50 as follows:

"To sustain the charge of threatening a public official the State must prove the following propositions:

First Proposition: That the defendant knowingly delivered or conveyed, directly or indirectly, to a public official by any means a communication containing a threat that would place the public official in reasonable apprehension of immediate or future bodily harm; and

Second Proposition: That Nicholas Albarran was a public official at the time of the threat; and

Third Proposition: That the threat was conveyed because of the performance or nonperformance of some public duty; and

Fourth Proposition: That when the defendant conveyed the threat, he knew Nicholas Albarran was then a public official; and

Fifth Proposition: That the threat to a sworn law enforcement officer contained specific facts indicative of a unique threat to the sworn law enforcement officer and not a generalized threat of harm.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

See IPI Criminal No. 11.50. The trial court also tendered to the jury IPI Criminal No. 11.49A (approved May 2, 2014), which states that "[a] person holding the position of a sworn law enforcement officer is a public official," along with IPI

- 4 -

Criminal No. 1.01 (approved Dec. 8, 2011), which states that it is the jury's duty to follow all the instructions given to it and that it may "not single out certain instructions and disregard others."

¶ 9 Williams's trial counsel stated he had "no objection" to the giving of IPI Criminal Nos. 11.49 and 11.50, nor did he propose different or supplemental instructions. The jury acquitted Williams of aggravated domestic battery but convicted him of threatening a public official. Williams was sentenced to 18 months' probation.

¶ 10 On appeal, Williams maintained that the trial court erred when it tendered IPI Criminal Nos. 11.49 and 11.50 to the jury. Williams noted that IPI Criminal No. 11.49 does not mention the "unique threat" requirement the State must prove under section 12-9(a-5) of the Code when the threat is made to a sworn law enforcement officer but that IPI Criminal No. 11.50 does. Williams argued that the instructions were therefore conflicting and that the jury in this case was misled as to the elements the State had to prove to secure a conviction for threatening a public official. Williams acknowledged that his trial counsel did not object to the instructions at trial nor in a posttrial motion. He argued, however, that the trial court's tendering of the instructions amounted to plain error or, alternatively, that trial counsel was constitutionally ineffective for failing to object to the instructions.

¶ 11 The appellate court rejected these contentions and affirmed Williams's conviction for threatening a public official. 2024 IL App (2d) 230268-U. The appellate court held that IPI Criminal Nos. 11.49 and 11.50 do not conflict but, instead, are complementary. *Id.* ¶ 28. As the appellate court explained, IPI Criminal No. 11.49 provides a general definition of the offense of threatening a public official, while IPI Criminal No. 11.50 specifies what propositions the State must prove to secure a conviction in an individual case, including the "unique threat" requirement. *Id.* ¶ 26. The appellate court held that nothing in IPI Criminal No. 11.49 contradicts or negates the propositions imposed under IPI Criminal No. 11.50 and that the jury in this case, reading the instructions together, would understand that the State had to prove the existence of a "unique threat" to Deputy Albarran beyond a reasonable doubt. *Id.* ¶ 27. In so holding, the appellate court expressly declined to follow *People v. Warrington*, 2014 IL App (3d) 110772, a decision in

which the appellate court accepted an argument similar to the one raised by Williams in this case. 2024 IL App (2d) 230268-U, ¶ 31.

¶ 12    Having determined that IPI Criminal Nos. 11.49 and 11.50 do not conflict, the appellate court held that the trial court did not err in tendering those instructions to the jury and that Williams's trial counsel was not ineffective for failing to object to the instructions. This court allowed Williams's petition for leave to appeal. See Ill. S. Ct. R. 315 (eff. Dec. 7, 2023).

¶ 13                                    ANALYSIS

¶ 14    Before this court, Williams repeats his contention that the trial court erred in tendering IPI Criminal Nos. 11.49 and 11.50 to the jury in this case because those instructions are conflicting. Williams acknowledges that his trial counsel did not object to the instructions but again argues that tendering the instructions to the jury amounted to plain error or that his trial counsel was ineffective in failing to object to the instructions. We first consider whether any error occurred.

¶ 15    "The purpose of jury instructions is to provide the jury with the correct legal principles applicable to the evidence, so that the jury may reach a correct conclusion according to the law and the evidence." *People v. Bannister*, 232 Ill. 2d 52, 81 (2008). "Jury instructions should not be misleading or confusing [citation], but their correctness depends upon not whether defense counsel can imagine a problematic meaning, but whether ordinary persons acting as jurors would fail to understand them [citation]." *People v. Herron*, 215 Ill. 2d 167, 187-88 (2005). "The task of a reviewing court is to determine whether the instructions, considered together, fully and fairly announce the law applicable to the theories of the State and the defense." *People v. Mohr*, 228 Ill. 2d 53, 65 (2008). We review *de novo* whether jury instructions accurately conveyed the applicable law. *McQueen v. Green*, 2022 IL 126666, ¶ 35.

¶ 16    As he did in the appellate court, Williams notes that IPI Criminal No. 11.49 does not mention the "unique threat" requirement the State must prove under section 12-9(a-5) of the Code when the threat is made to a sworn law enforcement officer, while IPI Criminal No. 11.50 does. This difference in wording, Williams contends, means that the two instructions are "inconsistent on an essential element"

- 6 -

of the offense. Further, according to Williams, the inconsistency between the instructions means that the jury in this case could have looked solely to IPI Criminal No. 11.49 to determine what the State had to establish to prove the offense of threatening a public official and, thus, could have convicted Williams without finding the "unique threat" requirement. Williams argues that, given this potential for confusion, it was error for the trial court to tender the two instructions to the jury. We disagree.

¶ 17    Williams's argument rests on the assumption that the jury might have read IPI Criminal No. 11.49 in isolation and simply disregarded IPI Criminal No. 11.50. However, jury instructions are not read in isolation; they are construed as a whole. *People v. Parker*, 223 Ill. 2d 494, 501 (2006); *People v. Housby*, 84 Ill. 2d 415, 433-34 (1981). Further, the jurors in this case were told not to single out or disregard any instructions, and "[a]bsent some indication to the contrary, we must presume that jurors follow the law as set forth in the instructions given them." *People v. Wilmington*, 2013 IL 112938, ¶ 49. No reasonable juror in this case could have believed that IPI Criminal No. 11.49 by itself governed this case or that IPI Criminal No. 11.50 could simply be disregarded. IPI Criminal No. 11.50 unambiguously told the jury that the State had to prove the "unique threat" requirement beyond a reasonable doubt to secure a conviction for threatening a public official, and nothing in IPI Criminal No. 11.49 negated that proposition. Read together, IPI Criminal Nos. 11.49 and 11.50 accurately set forth the applicable law, and the jury in this case could not have convicted Williams without finding the "unique threat" requirement beyond a reasonable doubt.

¶ 18    Williams contends, however, that this case is like *People v. Jenkins*, 69 Ill. 2d 61 (1977), and *People v. Hartfield*, 2022 IL 126729, two decisions in which this court found that the tendering of certain jury instructions amounted to plain error. In *Jenkins*, the jury was given an instruction that directed the jurors to find the defendant guilty of attempted murder if the State proved two propositions and a second, separate instruction that directed the jurors to find the defendant guilty if the State proved three propositions. *Jenkins*, 69 Ill. 2d at 64-65. Because these two "mandatory" and "self-contained" instructions expressly contradicted one another, this court found that the jury could not perform its "constitutional function" of rendering a verdict according to the law and that the tendering of the instructions amounted to plain error. *Id.* at 65-67.

¶ 19    Similarly, in *Hartfield*, the jury was given one instruction that directed the jurors to find the defendant guilty of aggravated discharge of a firearm in the direction of a peace officer if the officer was, in fact, in the direction of the discharge and a second instruction that told the jurors they "must determine" the defendant's guilt based on whether the officer *may have been* in the direction of the discharge. *Hartfield*, 2022 IL 126729, ¶¶ 17-23, 53. These mandatory instructions gave contradictory directions to the jurors on an essential element of the offense that the State had to prove to establish guilt, and as this court explained, it was not possible to know which instruction the jurors relied upon. *Id.* ¶ 61. Accordingly, this court again found plain error. *Id.*

¶ 20    *Jenkins* and *Hartfield* are distinguishable from this case. In both those cases, the trial court gave two different, mandatory instructions to the jury about what propositions the jurors had to find to return a guilty verdict. That situation is not present here. In this case, only IPI Criminal No. 11.50 lists the propositions the State must establish to prove the offense of threatening a public official, and only IPI Criminal No. 11.50 directs the jury to find the defendant guilty if those propositions are established. IPI Criminal No. 11.49, in contrast, sets forth only a general definition of the offense of threatening a public official and does not direct the jury to make any determination whatsoever regarding the defendant's guilt or innocence. Consequently, there is no contradiction between the two instructions and the jurors in this case were not forced to pick between inconsistent legal commands.

¶ 21    Williams also relies on *Warrington*, 2014 IL App (3d) 110772. In *Warrington*, the defendant was charged with threatening a public official, a police officer. *Id.* ¶ 1. The trial court tendered one instruction to the jury, People's instruction No. 12 (modeled on IPI Criminal No. 11.50), which directed the jurors to find the defendant guilty if the State proved certain propositions. *Id.* ¶¶ 19, 28. Included in this instruction was the proposition that the State had to establish that the police officer was placed in " 'reasonable apprehension' " of immediate or future bodily harm. (Emphasis omitted.) *Id.* ¶ 28. The trial court also tendered a second instruction to the jury, People's instruction No. 10 (modeled on IPI Criminal No. 11.49), which set forth a general definition of the offense of threatening a public official. *Id.* ¶ 29. That instruction did not include the "reasonable apprehension" language, nor did it direct the jurors to make any finding of guilt or innocence. *Id.*

The appellate court concluded that it was "clear from a simple comparison" of the two instructions that they were "inconsistent" (*id.*) and then went on to hold that the tendering of the two instructions amounted to plain error because conflicting instructions cannot be deemed harmless (*id.* ¶ 30).

¶ 22   *Warrington*'s holding that People's instructions No. 10 and No. 12 were inconsistent and therefore required reversal of the defendant's conviction was incorrect. Only People's instruction No. 12 directed the jury to find the defendant guilty of threatening a public official based on the State having shown that certain propositions were true. People's instruction No. 10 contained no such directive, as it set forth only a general definition of the offense. Accordingly, nothing in People's instruction No. 10 contradicted the legal command given in People's instruction No. 12, and the jury did not face any confusion regarding what propositions had to be established to find the defendant guilty. *Warrington* is therefore expressly overruled on this point.[1]

¶ 23   The instructions tendered by the trial court in this case fully and accurately informed the jury of the applicable legal principles. IPI Criminal No. 11.49 supplied a general definition of the offense of threatening a public official, while IPI Criminal No. 11.50 directed the jury as to what propositions had to be established to prove Williams's guilt—including the "unique threat" element mandated by section 12-9(a-5) of the Code. The jury was expressly told that it could not convict Williams unless it found the "unique threat" element beyond a reasonable doubt, and nothing in IPI Criminal No. 11.49 negated or contradicted that directive. Accordingly, the trial court did not err in tendering those instructions to the jury. Because no error occurred, there was no plain error, and Williams's trial counsel

---

[1]The appellate court in *Warrington* also offered a second, "more important[ ]" reason for reversing the defendant's conviction for threatening a public official: the trial court failed to instruct the jury entirely on the necessity of finding that the defendant had made a "unique threat" to the police officer. *Warrington*, 2014 IL App (3d) 110772, ¶ 31. We express no opinion on the correctness of this alternative holding, which was sufficient, by itself, to support the appellate court's judgment of reversal. See, *e.g.*, *Woods v. Interstate Realty Co.*, 337 U.S. 535, 537 (1949) (noting that, where a reviewing court's decision "rests on two or more" alternative grounds, either may support the court's judgment).

was not constitutionally ineffective for failing to object to the instructions.

¶ 24                                       CONCLUSION

¶ 25        For the foregoing reasons, the judgment of the appellate court, which affirmed the judgment of the circuit court, is affirmed.

¶ 26        Judgments affirmed.